UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**EUNICE A. BRIGGS** and **TONI A. BRIGGS**,
as Co-Administratrixes of the Estate of
Richard E. Briggs,

                Plaintiffs,

        vs.

**DECLARATION**
**09-cv-6147-CJS**

**THE TOWN OF OGDEN, THE OGDEN POLICE
DEPARTMENT, CHIEF DOUGLAS NORDQUIST,
SERGEANT SHAWN FITZGERALD, SERGEANT
CHRISTOPHER MEARS, OFFICER STEVEN PLOOF,
THE COUNTY OF MONROE, THE MONROE COUNTY
SHERIFF'S OFFICE, SHERIFF PATRICK O'FLYNN,
SERGEANT THOMAS BURNS, DEPUTY MICHAEL
SHANNON, DEPUTY MATTHEW MACKENZIE,**
in their individual and official capacities, and other known
or unknown members of THE OGDEN POLICE DEPARTMENT
and THE MONROE COUNTY SHERIFF'S OFFICE,

                Defendants.

---

      JEFFREY WICKS, ESQ., under penalties of perjury pursuant to 28 U.S.C. section 1746, states as follows:

      1.    I am the attorney for the plaintiffs herein, EUNICE A. BRIGGS and TONI A. BRIGGS, and make this Declaration in support of the plaintiffs' cross-motion for an order granting leave to amend the Amended Complaint previously filed and served in this action, pursuant to Fed. R. Civ. P. Rule15(a)(2). The proposed Second Amended Complaint is submitted herewith as **Exhibit A**. I also submit this Declaration in support of the plaintiffs' application for a

1

determination that the Second Amended Complaint relates back to the date of the original pleading, pursuant to Fed. R. Civ. P. Rule 15(c)(1).

2. Pursuant to Fed. R. Civ. P. Rule 15(a)(2), the plaintiffs may amend their pleading only with the opposing party's written consent or leave of the court. Thus, without either of these, this present motion is necessary.

### A. Procedural History

3. This case was commenced by the filing of a Complaint on March 30, 2009. Subsequently, an Amended Complaint was filed on June 26, 2009, which remains the present Complaint which we seek to amend.

4. The plaintiffs seek leave to amend their complaint to add the following as party defendants in this action: Lieutenant Gregory T. Schroth ("Lt. Schroth"), Lieutenant Michael T. Fowler ("Lt. Fowler"), Sergeant Matthew G. McGrath ("Sgt. McGrath"), and Investigator Sergeant Scott Walsh ("Inv. Walsh"), all employees of the Monroe County Sheriff's Office ("MCSO"). Presently, the MCSO and Monroe County Sheriff Patrick O'Flynn both are named as defendants.

5. Despite the caption in this case, to date, several defendants in this case have been dismissed by Stipulation. First, defendant, MCSO Sergeant Thomas Burns was dismissed by Stipulation of the parties on March 6, 2013 (see docket no. 25). Later, all of the defendants from the Town of Ogden were dismissed on March 30, 2015, after a settlement was reached between Plaintiffs and those defendants (see docket no. 39). Accordingly, the only defendants who remain are: The County of Monroe, The Monroe County Sheriff's Office, Sheriff

Patrick O'Flynn, Deputy Michael Shannon ("Dep. Shannon"), and Deputy Matthew Mackenzie ("Dep. Mackenzie").

6. Depositions of fact witnesses began on May 10, 2011 with Plaintiff Toni A. Briggs. They concluded with the deposition of MCSO Sergeant Delgudico on August 27, 2014.

7. Depositions of the four individuals sought to be added herein as defendants in this case have been taken: Inv. Walsh on October 28, 2013; Lt. Fowler on November 19, 2013; Lt. Schroth on July 22, 2014; and, Sgt. McGrath on July 22, 2014.

8. Experts have been retained by both sets of: Samuel A. Farina, Jr. ("Mr. Farina") for the Plaintiffs and Shayne P. Leitch for the County and MCSO defendants.

9. Accordingly, disclosure of the Experts' reports were timely made and served by both parties. The Disclosure of the Report ("the Report") by Plaintiffs' expert, Mr. Farina, a copy of which is attached hereto as Exhibit "B", was made on September 24, 2014.

10. Additionally, depositions of both experts took place on December 3, 2014.

11. Mr. Farina's qualifications as an expert are set forth in full in the Report at pages 1-3. Among other achievements, Mr. Farina has 26 years of law enforcement experience that includes 19 years as an MCSO Deputy Sheriff, where he achieved the rank of Police Commander and additional experience as the Commander of the Hostage Negotiations Team for almost six (6) years. See

the Report at p.1, ¶(A)(1). Significantly, in that capacity, in July of 2003, he personally authored the MCSO "Hostage Recovery Team Standard Operating Procedures", a copy of which is attached hereto as Exhibit "C". Coincidentally, well before it was known that Mr. Farina would be an expert in this case, this document was marked as a deposition exhibit in this case and was referred to throughout the various depositions.

### B. The Present Amendments Only Could Be Brought In The Wake Of the Expert's Report And Deposition.

12. Although depositions of the four (4) proposed defendants took place on the dates set forth above, it was not until, first, the receipt of the Report, and second, the deposition of Mr. Farina, that the reasons for the present amendments became clear. It is for that reason that the present Motion could not be brought until after those times.

#### 1. Lieutenant Schroth

13. With respect to Lt. Schroth, as the Report points out, he was the designated Incident Commander until he was relieved. See the Report, p.7, ¶5. The Report then goes on to describe Lt. Schroth's failures. The Report sets forth that "[o]ptions were available during the incident as means to communicate with Richard Briggs." See the Report at p. 13. His telephone number was available; the apartment intercom system was another possible option; a bullhorn or mega phone may have been another option to attempt to encourage Richard Briggs to communicate with the police. See the Report at p. 13. However, there was no indication that either of the noted communication mediums were attempted nor

4

the Report at p.1, ¶(A)(1).  Significantly, in that capacity, in July of 2003, he personally authored the MCSO "Hostage Recovery Team Standard Operating Procedures", a copy of which is attached hereto as Exhibit "D".  Coincidentally, well before it was known that Mr. Farina would be an expert in this case, this document was marked as a deposition exhibit in this case and was referred to throughout the various depositions.

### B. The Present Amendments Only Could Be Brought In The Wake Of the Expert's Report And Deposition.

12.     Although depositions of the four (4) proposed defendants took place on the dates set forth above, it was not until, first, the receipt of the Report, and second, the deposition of Mr. Farina, that the reasons for the present amendments became clear.  It is for that reason that the present Motion could not be brought until after those times.

#### 1. Lieutenant Schroth

13.     With respect to Lt. Schroth, as the Report points out, he was the designated Incident Commander until he was relieved.  See the Report, p.7, ¶5. The Report then goes on to describe Lt. Schroth's failures.  The Report sets forth that "[o]ptions were available during the incident as means to communicate with Richard Briggs." See the Report at p. 13.  His telephone number was available; the apartment intercom system was another possible option; a bullhorn or mega phone may have been another option to attempt to encourage Richard Briggs to communicate with the police.  See the Report at p. 13.  However, there was no indication that either of the noted communication mediums were attempted nor

4

utilized by any of the first responding officers. However, the Report then goes on to observe that that:

> "Sergeant Burns stated in his deposition that he was continually advising his supervisor, Lieutenant Schroth, of the incident from his cell phone while at the apartment foyer to Building 122. As the commanding officer for the critical incident until relieved at approximately 7:51pm, there was no indication as to direction or suggestion by Lieutenant Schroth to initiate conversation with Richard Briggs nor was there any direction prohibiting contact with Richard Briggs."

See the Report at p. 13. This failure by Lt. Schroth, the Report goes on to explain, was that an early opportunity to communicate with Mr. Briggs and thereby diffuse the situation was missed:

> "'Establishing communication is the vehicle for the delivery of crisis intervention strategies and tactics." (D10, pg. 539) The previous cite emphasizes the vital need to successfully initiate communications with subjects in crisis. Prior to the arrival and assessment of the hostage negotiators, there was only one attempt to communicate with Richard Briggs. Given my education, training and experience with crisis communications and crisis negotiations, the preferred and accepted police practices and protocols for a situation of this nature is to attempt to initiate communications with a subject in crisis in an expeditious manner once the scene is contained and controlled."

See the Report at p. 13.

### 2. Investigator Walsh

14. With respect to Inv. Walsh, according to the Report, there was a complete and utter failure on his part to complete his task of gathering invaluable information which, if obtained, could have led to a different conclusion. As set forth in the Report, Inv. Walsh was designated as the primary negotiator and tasked with intelligence gathering at the apartment where Toni Briggs and other family members were located during the incident. See the Report at p. 14. To

5

accomplish the task of intelligence gathering he was charged, among other things, with completing the MCSO's "Subject Background Investigation Form" (the Form"). See the Report at p. 14.

15.    The Report is replete with descriptions of mistakes and misjudgments made by Inv. Walsh, the substance of which is set forth in its section entitled "Opinion 2 – Intelligence gathering efforts were underprovided for the purposes of proper assessment and strategy development for the situation." See the Report at pp. 14-16.  These errors are too numerous to set forth herein, but in substance, the Report faults Inv. Walsh with a complete failure to gather information – either on the Form or by asking questions of Mr. Briggs' family. As an example:

> "Remarkably, while interviewing family members, Investigator Walsh becomes aware of telephone conversations that had taken place between Lori Briggs and Richard Briggs as well as other family members while Richard was barricaded in his apartment. Given this knowledge of telephone conversations, Investigator Walsh stated in his deposition that he **did not ask** any of the family members about what was said during their phone conversations with Richard."

See the Report at p. 14 (emphasis in original).  This failure included the fact that the family had reported Richard's use of Klonopin, which Inv. Walsh neither set forth on the Form or related to anyone. See the Report at p. 14

16.    The Report the goes on to list at least six (6) crucial pieces of information which " . . . the on-going telephone conversations by family members with Richard would have revealed . . . " had Inv. Walsh bothered to ask.  See the Report at p. 15.

6

17.     Accordingly, the Report notes that "[t]he short attention given to the intelligence function (15 minutes) by Investigator Walsh coupled with his cursory notations of received information on the Subject Background Form lends itself to cursory information at best when greater detailed intelligence was necessary for a proper assessment and negotiation strategy." See the Report at p. 16.

### 3. Lieutenant Fowler and Sergeant McGrath

18.     The failures of Lt. Fowler and Sgt. McGrath must be set forth in tandem because, according to the expertise of Mr. Farina, the two – as MCSO Special Weapons And Tactics ("SWAT") and Hostage Recovery Team ("HRT") Commanders, respectively, their charge was to work together to form a plan for the resolution of the crisis. "The Hostage Team commander was responsible for ensuring that efforts are made by police personnel to identify, obtain and manage intelligence information as it pertains to the subject who is in crisis in order to develop a negotiation strategy, prepare the negotiators for their communication with the subject and assist SWAT with development of a tactical plan." See the Report at p. 16. Moreover, it is crucial that:

> "In any critical incident, a symbiotic relation must exist between the tactical team (SWAT) and the negotiators. Each component has a co-dependent goal to resolve a crisis situation. Each team commander is tasked with developing and formulating a resolution strategy that is consistent with their own mission – the negotiation goal is initiating communication and resolving the crisis event by using crisis negotiation skills whereas the tactical mission is to ensure the safety and security of the scene and those involved."

See the Report at p. 17.

19. An example of the serious errors made in this regard was the decision of Lt. Fowler, and ratified by Sgt. McGrath, according to the Report, to terminate the telephone line to the Briggs apartment used by Richard Briggs following an apparent inability of Time Warner to "isolate" the telephone line. See the Report at 17. The decision by Lt. Fowler and Sgt. McGrath was based on "'antagonistic actions and communications between Mr. Briggs and his wife[]'" as well as "'unproductive communication with family members'". See the Report at 17.

20. However, the Report notes that "Sergeant McGrath admitted in his deposition that he did not have personal knowledge of conversations that were 'elevating the subject's anger and level of stress' necessitating Fowler's demand to terminate *the only means of contact with the subject at that time.*" See the Report at 17 (emphasis added). Subsequently, the Report sets forth the significance of this mistake in cutting off the phone, since it would not be until much later that an attempt at another means of communication – the use of throw-phones" was attempted:

> "This was now 4 hours and 7 minutes from the time of the arrival of the first responding officers (6:43pm) and 2 hours and 8 minutes since the termination of telephone service for Richard Briggs (8:42pm) that the police formally attempted to initiate communications (other than the shout-outs by Sgt. Burns that were unsuccessful) with the subject in crisis. Noting the arrival of a trained hostage negotiator, the first to arrive as at 7:56pm, almost three hours transpired until negotiators attempted to initiate communicate with the subject in crisis, Richard Briggs."

See the Report at 18.

8

21. To add insult to injury, SWAT Commander Fowler dispatched the Armored Personnel Carrier to the front of the building "outside his window and attempt to communicate through the vehicle's PA system." A PA communication also was made from the vehicle to convince Rich to answer the throw-phone. However, the response from Richard Briggs as a result of the aforementioned actions consisted of the elevated volume of music that was heard coming from the apartment. See the Report at 19.

### 4. Deputy Michael Shannon and Deputy Matthew Mackenzie

22. The Report fails to name any wrongdoing either by MCSO Dep. Shannon or Dep. Mackenzie. Consequently, Plaintiffs seek to remove their names and dismiss any causes of action against them.

### C. Relation Back

23. The plaintiffs also seek a determination that the proposed amendment relates back to the date of the original pleading.

24. The proposed Second Amended Complaint asserts claims arising out of the same conduct, transactions and occurrences as those set forth in the Amended Complaint. No new legal theories are advanced. The only difference between the Amended Complaint and the proposed Second Amended Complaint is the addition of the four additional MCSO employees as defendants.

25. In addition, the proposed new defendants are all employees of the defendant Monroe County Sheriff's Office and subordinates of the defendant Sheriff Patrick O'Flynn.

26. Upon information and belief, the proposed new defendants will all be represented by the Monroe County Department of Law, the same attorney who has represented all of the County defendants since the inception of this case.

27. Based upon these factors, I respectfully submit that the proposed new defendants were aware, or should have been aware, of the pendency of this action and that they would have been named as parties had the facts surrounding the impropriety of their conduct been known prior to the issuance of the Reprt.

28. There can be no question that the proposed new defendants will not be prejudiced by their in their defense. As noted previously, they have already been deposed and will be represented by the same counsel. Every fact set forth above for which the Report is cited is based either upon a deposition transcript or an exhibit.

29. Based upon the foregoing, I respectfully submit that defendants were well aware Plaintiffs' claims, were aware of this action and will not be prejudiced by the addition of Lt. Schroth, Lt. Fowler, Sgt. McGrath and Inv. Walsh as parties. Consequently, the Second Amended Complaint should relate back to the date of the original Complaint.

Dated: April 17, 2014

_____
JEFFREY WICKS